REDDOCH ET AL. *v.* WILLIAMS ET AL.

[92 South. 831, No. 21167.]

1. WILLS. *Under devise to daughter and her children then living or thereafter born, devisees take as tenants in common.*

   Where a testatrix devises property to her daughter and her children now living or hereafter born, the mother and her children, or all of the devisees, take the property as tenants in common of the fee, each owning the same undivided interest therein.

2. DEEDS. *Where grantor conveys property to one for life with remainder at her death to lawful children in fee, it is not an attempt to create an estate in fee tail in violation of statute.*

   Where the grantor in a deed conveys property to one for life with remainder at her death to her lawful child or children in fee, this conveyance is not an attempt to create an estate in fee tail, and for that reason is not violative of section 2765, Code 1906 (section 2269, Hemingway's Code).

3. PERPETUITIES. *Deed conveying life estate with remainder will be held good up to the point where statute against estate in fee tail is violated.*

   Where the intent of a grantor is to convey a life estate to her daughter with remainder at her death to her children, and in default of children then to other devisees, and the deed is so worded, even

though there may be ulterior limitees mentiond in the deed which
would violate section 2765, Code 1906 (section 2269, Hemingway's
Code), the court will hold the deed good up to the point where the
statute is violated.

4. PERPETUITIES. *Where gift is invalid by reason of rule against per-*
*petuities, parts violating rule may be rejected.*

When a part only of a gift is invalid by reason of the rule against
perpetuities, and the various parts are independent and separable,
and the remote parts are not necessary for the carrying out of the
common or general purpose of the instrument, those which violate
the rule against perpetuities may be rejected, and those which do not
upheld.

5. VENDOR AND PURCHASER. *Purchasers for value from grantors heirs*
*without notice held entitled to same protection as bona fide purchasers*
*as if purchasing directly from grantor.*

Under sections 2784 and 2787, Code 1906 (sections 2288 and 2291,
Hemingway's Code), which provide that a conveyance of land shall
not be good against a purchaser for valuable consideration without
notice unless properly acknowledged and lodged with the clerk of
the chancery court for record, and further that such conveyance,
unless so lodged, shall be void as to subsequent purchasers for val-
uable consideration without notice, purchasers from the heir of a
grantor are proteceted by these statutes to the same extent as if they
had purchased directly from the grantor.

6. DEEDS. *Deed purporting to be warranty deed held to convey all in-*
*terest of grantor in the premises.*

A deed purporting to be a warranty deed which properly describes the
lands conveyed followed by a clause reading, "It is the intention of
this conveyance to convey to said grantee all the interest of the
grantor in and to the said Haynes Bluff plantation, whether cor-
rectly described above or not, said interest having been acquired by
said grantor under the will of Mrs. Nancy Simmons," and where
at the time this deed is executed the grantor owns an interest in fee
in this land devised her under the will of Nancy Simmons, and also
owns an apparent undivided interest in fee inherited from her
mother, who was also a devisee of Nancy Simmons, and the grantor
never thereafter claimed any interest in said plantation, *held,* that it
was her intention and by this deed she conveyed to her grantee all
of the interest owned by her in this plantation.

7. DEEDS. *General grant followed by particular description will not be lim-*
*ited thereby unless description manifestly meant to operate as a lim-*
*itation.*

A general grant in a deed followed by a particular description will not be thereby limited, unless it is manifest that this particular description was meant to operate as a limitation upon the grant.

8. VENDOR AND PURCHASER. *Purchaser from grantor who is heir of an ancestor who made an unrecorded deed, but was without notice thereof, held bona fide purchaser for value.*

Where a deed conveys and warrants to a grantee all of the right, title, and interest of one in lands, for which the grantee pays a valuable consideration, and has no notice of an unrecorded deed made to this land by the ancestor of the grantor, and the grantor is the heir of this ancestor, then the grantee is a purchaser for value without notice under the above sections of the Code and the unrecorded deed is void as to him.

APPEAL from chancery court of Warren county.

HON. E. N. THOMAS, Chancellor.

Suit by Marie Reddoch and another, minors, by their next friend, against H. K. Williams and others. From a decree therein, plaintiffs appeal. Affirmed.

*Wm. J. McKay,* for appellants.

In that late, learned and exhaustive note, beginning at page 49 of L. R. A. 1917B, at page 50, it is said with pointed and controling application to the will of Nancy Simmons: "The more generally prevalent view, which is based upon one of the resolution in Wild's case, is that where there is a bequest or devise to one and his or her children, and there are children in existence (as in the case at bar), it will be presumed, in the absence of any contrary indication in the context, that the parent and children were intended to take concurrently (as equal co-tenants in common), and not successively, as a life estate to the parent with remainder to the children. See note 6 wherein are cited many cases from England and from many of the strongest courts of the United States, including Alabama, Georgia, Indiana, Kansas, Kentucky, New Jersey, Massachusetts, New York, North Carolina, Ohio, South Carolina, Tennessee, Virginia and West Virginia. This has been said to be the natural and ordinary meaning

of the words. *Sutton* v. *Torre* (1842), 6 Jur. Eng. 234; *Moushand* v. *Rodetsky* (1898), 5 Ohio N. P. 256; *Moore* v. *Ennis* (1913—Del.), 87 Atl. 1009; *Brabham* v. *Day*, 75 Miss. 927; *Tyer* v. *Lilly*, 81 Miss. 606; *Jackson* v. *Goggin*, 29 Ga. 403; *Annable* v. *Patch*, 3 Pick. (Mass.) 360; *Dingley* v. *Dingley*, 5 Mass. 535; *Fearne Contingent Remainders* (7 Ed.) 399; *Martin* v. *Martin*, 52 W. Va. 381; *Bentley* v. *Ash*, 59 W. Va. 641; 101 Ky. 738; Schouler on Wills (3 Ed.) sections 529-533; 30 Am. & Eng. Ency of L. (2 Ed.), pp. 724 and 725; Remsen on Wills, pp. 93-96; 40 Cyc. pp. 1473, 1480 and 1646; 7 So. 445.

Of the specious and unsound reason assigned in *Jeffrey* v. *Honywood*, 4 Madd, 211, cited and quoted from by Mr. T. G. BIRCHETT at bottom of page 9 and top of page 10 of his brief, the said note at page 68 says, of the opening of the estate to let in after-born children: "But inasmuch as this is an inevitable result of the form in which the gift is made, it is hard to see where there is anything 'singular' in the intention. Any incongruity in the result is not attributable to the fact that the gift is to future as well as existing children, but to the (unwarranted) assumption that the parent was the primary object of the testator's solicitude." Of which assumption there is not the faintest indication in Nancy Simmons' will. The only other case cited by appellees for their bad law is *Jeffrey* v. *DeVitre* (Eng.), supra, which had to do with personal property instead of realty.

It is thus seen that appellees cite only one solitary case, and that from England and based upon an unsound reason, in support of their untenable contention that a life estate was vested in Bettie Cowan, with remainders to her two daughters.

We, therefore, now pass from further consideration of the codicil which vested a one-sixth undivided interest in the Haynes Bluff plantation in each one of the three, Bettie Cowan, the mother, and her two children, daughters, then living, Annie Laurie and Kate J. as equal, concurrent co-tenants in common in fee. If Bettie Cowan had

had afterborn children, they would have taken equally with their mother and the other children by executory devise.

*Bettie Cowan's Deed.* It will be remembered and borne in mind that by the codicil to Nancy Simmons' will a one-sixth undivided interest in the Haynes Bluff plantation was devised to Bettie Cowan in fee simple. An undivided one-half of this undivided one-sixth interest, or a one-twelfth undivided interest, in the Haynes Bluff plantation the said Bettie Cowan by deed conveyed.

"To the said Annie Laurie Barton for and during the term of her natural life, with remainder at her death to her lawful child or children in fee, if she leaves any one or more surviving her; and, if she leaves none, then to her sister, the said Kate J. Middleton, until her own child, Barton St. Clair, shall become of lawful age and then to him in fee; provided, that, if the said Kate J. Middleton should die before her said son, Barton St. Clair, becomes of lawful age, then said interest in said land shall revert to and vest in the grantor herein; and, if she be dead then to Nancy and Annie Simmons, children of her brother, Benjamin Simmons, in equal shares in fee simple."

We believe and submit that we fairly and faithfully construe or interpret the briefs of appellees in saying that their contention and argument are that the above deed does not attempt to entail the estate in violation of the first branch of section 2436 of the Code of 1892, relating to fee tails, but "that the rule against perpetuities has been violated," that is, the second branch of said statute.

By no possible construction does this deed attempt to create an estate in fee tail, which is the only estate converted into an estate in fee simple by the first branch of the statute. An estate in fee tail can only be created by a deed or devise to A and the heirs of his body with reversion; whereby the estate passed successfully to A's lineal descendants, to the ultimate extinction of the issues of A's body, however remote. Nothing of the kind is remotely attempted by this deed. The words "heirs" and "body," words of procreation essential to an estate in

fee tail, are not used, 2 Bl. Com. 114. "Children," the word used, will not create an estate in fee-tail. 83 Ky. 442. Merely for the sake of argument, suppose, contrary to law and fact, that an estate in fee tail were attempted, then, under the first branch of the statute, that is the life estate of Annie Laurie Reddoch and the remainder to appellants, all three being the equal first takers, of the whole estate, the fee simple.

On account of its controlling and conclusive application to the case at bar we cannot refrain from again quoting from that most learned, accurate and exhaustive exposition of the meaning of this second branch, found in the opinion of our court in the case of *Banking Co.* v. *Field, supra:* "This court has held in *Jordan* v. *Roach,* 32 Miss. 620, and *Cannon* v. *Berry,* 59 Miss. 299, that the object of this statute (second branch) is to specify a time limit beyond which the grantor cannot go, but within which he can exercise unbounded discretion; that the purpose of the statute (second branch, of course), was to prescribe a limit of time beyond which the vesting of the estate in fee could not be suspended; that the lives of the two donees in being were the measure of time within which the ultimate fee must vest—in other words, that the statute prescribed a limit of time, and not a formula of conveyancing."

Appellees cite the case of *Nicholson* v. *Fields,* 71 So. 900, which is not applicable to the case at bar, for the reason that, as to the testator, our court said: "His intentions are manifest—he undoubtedly intended to create a fee tail, and succeeded in doing so."

The case of *Davenport* v. *Collins,* 95 Miss. 358, cited by appellees, has no application for the reasons: It antedated our present statute; and it was a series of limitations to classes and not to individuals, as in the case at bar. Appellees cite the case of *Gully* v. *Neville,* 55 So. 289, which has no application to the case at bar for the reason it antedated our present statute; and it was a successive

series of limitations to classes and not to individuals, as in the case at bar.

The well settled rule of law and reason is: "Where an interest or estate is given by deed or will with a limitation over or a specified contingency, such limitation, if it violates the rule against perpetuities, is for the purpose of determining the effect on the prior disposition of the property, to be considered as stricken out, leaving the prior disposition to operate as if the limitation, over had never been made." 22 Am. & E. Ency L. (2 Ed.), p. 723; 106 Mass. 86; 18 N. Y. 103.

In accordance with the general rule which has just been stated, where a disposition of property or of an interest therein is followed by a limitation over, the prior disposition is not invalidated by the fact that the limitation over is void for remoteness." 22 Am. & Ency. L. (2 Ed.), p. 723, and the many cases cited in note 9 thereunder.

"The intention of a testator is not to be set aside because it cannot take effect to the full extent, but is to work as far as it can." *Thellusson* v. *Woodford*, 4 Ves. Jr. 427.

The statute against perpetuities only cuts off estates which are to take effect after the prescribed limit." *Bean* v. *Bowen*, 47 How. Pr. 306. The void limitation over will not affect a prior absolute estate. *Arnold* v. *Congreve*, 1 Russ. & M. 209; *Hudson* v. *Gray*, 58 Miss. 882.

In the leading case of *Brattle Square Church* v. *Grant*, 3 Gray (Mass.) 146, 63 Am. Dec. 752, most highly approved and followed in our case of *Banking Co.* v. *Field*, *supra* the court held: "So it was early held that where a testator devised all his real and personal estate to his wife for life, and after her death to his son and his heirs forever, and in case of the death of the son without any heir then over to the plaintiff in fee, the devise over to the plaintiff was void, and the son took an absolute estate in fee: *Tillbury* v. *Barbut*, 3 Atk. 617; *Tyte* v. *Willis*, Cas. *temp.* Talb. 1; 1 Fearne on Cont. Rem. 445.

This court will note too that, in the case of *Caldwell* v. *Willis*, 57 Miss. 555, cited by appellees this court on ac-

count of a void limitation, did not give an absolute estate in fee to the "wife," the life tenant, as a so-called first taker who corresponds precisely to Annie Laurie Barton, the life tenant, in the case at bar; but, on the contrary and in accordance with *Brattle, etc.* v. *Grant, supra,* this court gave the absolute estate in fee to the son, Daniel, who corresponds precisely to the lawful surviving child or children of the life tenant in the case at bar.

By our later statutes the number of donees is restricted to two, but even under those enactments the conveyance in question would not be condemned, R. L. Cannon (Annie Laurie Barton) and J. N. Cannon (Kate J. Middleton) were both living when the deed was made. It is not possible to conceive of any state of facts under which, by the terms of the deed, the vesting of the ultimate fee can be prolonged beyond a period of twenty-one years and ten months after the death of both of them . . . and wherever this is so, the limitation is good.

The deed in question, having no *habendum* and *tenendum* clause or part, such part having happily fallen into lawful disuse with us, does not present for consideration inconsistencies between the granting part of the *habendum* and *tenendum* part, with the intention—defeating mass of technical rules of construction in regard thereto.

The construction must be reasonable and agreeable to common understanding, and the words employed in a deed should be given their fair and reasonable meaning, receiving the interpretation accorded to them by the common usage of mankind, having in view the circumstances of their use and the context that is, unless the words employed are technical, they must be construed in their plain, natural, established, definite, usual, obvious and ordinary meaning, in the absence of ambiguity . . ." 18 C. J. 258 and 259.

Where words are contradictory those which are more general (as all the interest of the grantor), will be restrained by those more specific and particular (as 'said interest having been acquired by said grantor under the

will of Nancy Simmons'). Generally the express mention
of one thing (said interest having been acquired by said
grantor under the will of Nancy Simmons) in a grant im-
plies the exclusion of another (all interest of the grantor).
18 C. J. 260.

In case of repugnancy all the parts of a deed should
be made to harmonize if practicable upon a construction
of the whole instrument. If both parts of a deed may well
stand together consistently with the rules of law, they will
be construed to have that effect rather than be held repug-
nant.

No word is to be rejected, unless there cannot be given
a rational construction to the instrument with the words
as they are found. "General terms in a grant may be lim-
ited and restrained by a recital stating the object of the
grant." 18 C. J. 267 and 268; 18 C. J. 278, 279, 280, 281,
284, 216. So in the case at bar, when the grantor clearly
specified that she was conveying only that interest which
she acquired under the will of Nancy Simmons, no other
interest passed by the deed.

The cases cited by appellees are not applicable to the
case at bar and are not, of course, out of line with the
above general, modern rules and principles. In view of
these principles, the circumstances surrounding the par-
ties and connected with the subject-matter, the plain mean-
ing and evident intention of the deed itself, there can be
no doubt but that the only interest which Annie Laurie
Reddoch conveyed to D. Bunch was the only interest which
she then owned and could convey, that is, the "interest
having been acquired by said grantor under the will of
Nancy Simmons."

Furthermore, Annie Laurie Reddoch, the life tenant un-
der the deed from her mother, Bettie Cowan, could not by
her deed to D. Bunch convey or affect the remainder es-
tates in fee in her children, the appellants. Code 2774;
*Anglin* v. *Broadnax,* 97 Miss. 514; 16 Cyc. 636. Her deed,
however, construed, was, as to the remainder estates, abso-
lutely void and of no effect. *Dixon* v. *Cook,* 47 Miss. 220;

*Miss. Valley Co.* v. *Railroad Co.,* 58 Miss. 846; *Chaffe* v. *Halpin,* 62 Miss. 1.   D.  Bunch having, by his deed, purchased only an interest in the land cannot occupy the position of an innocent purchaser.   "If the deed purports and is intended to convey only the right, title, and interest in the land, as distinguished from the land itself, it comes within the strict sense of a quitclaim deed and will not sustain the defense of innocent purchaser." 39 Cyc. 1694.

*The Land Records.*  In the briefs for the appellees, with reference to the deed from Annie Laurie Reddoch to D. Bunch, through which deed and grantee the appellees claim, it is said: "When D. Bunch examined the records at the time of his purchase of the Reddoch interest in 1896, he found an outstanding interest in Bettie Cowan."

This is fatefully true. · And let us recall what other controlling facts he knew or found out by the records.   D. Bunch also then knew, both of his own personal knowledge and from the records, that he was then a tenant in common of this very land with his grantor, Annie Laurie Reddoch, by a former recorded deed from this selfsame grantor; he knew from his own personal knowledge and from the records that there were many other cotenants of the land besides him and Annie Laurie Reddoch; he absolutely knew from his own personal knowledge and from the records that Annie Laurie Reddoch did not own, could not convey, and did not propose to convey to him the whole and entire Haynes Bluff plantation, but, on the contrary, that she then only owned, could only convey and was proposing only to convey to him a small undivided interest in the land.

Therefore, in conclusion, we submit that it is established beyond any doubt, that by her deed Annie Laurie Reddoch did not convey or intend to convey to D. Bunch any other interest in the Haynes Bluff plantation than the one so nearly, specifically and particularly described in her deed, that is, the "interest having been acquired by said grantor under the will of Mrs. Nancy Simmons, deceased; "that D. Bunch never bought, or intended to buy or had any

right or reason to think he was buying from Annie Laurie Reddoch any other interest than the one so particularly described in the deed as that "interest having been acquired by said grantor under the will of Nancy Simmons, deceased;" that by her deed Annie Laurie Reddoch never conveyed to D. Bunch and D. Bunch never by said deed bought from her, as an heir of her mother, Bettie Cowan, but only and exclusively as a devisee of her grandmother, Mrs. Nancy Simmons; that D. Bunch was never either an actual or an innocent purchaser from Annie Laurie Reddoch, either as heir or grantee or in any other capacity, of the interest which she and her children, the appellants, as remaindermen, acquired by the deed of Bettie Cowan; that by the appellee's main argument and contention, both at the time of her deed to D. Bunch and at the time of the filing of the former partition suit, Annie Laurie Reddoch was the apparent owner of the record title, as an heir of Bettie Cowan, to the interest now asserted by the appellants, as remaindermen under the deed of Bettie Cowan, and yet neither Annie Laurie Reddoch nor her children, the appellants, were made parties to the former partition suit; that our recording statute has no application whatever to the case at bar, because none of the appellees can possibly point to a single conveyance or proceeding that legally conveyed or affected the interest conveyed by the unrecorded deed; that none of the appellees, nor any one of their predecessors in conveyances, can possibly occupy the position of innocent purchasers under our recording statute; and that the appellants are entitled to recover and have allotted to them their lawful interests.

We respectfully submit that the decree of the lower court should be reversed and the cause remanded for further proceedings in accordance with the rights and interests of the appellants.

*Brunini & Hirsch*, for appellee.

A *bona-fide* purchaser from an heir takes the estate as against the holder of an unrecorded deed from the ances-

tors. 39 Cyc. 1753, and note 80. See also 48 Century Ed-
dition, American Digest, under head "Vendor & Purchas-
er." See 564, with authorities thereunder.

*Construction of Reddoch Deed.* The deed executed by
Annie Laurie Reddoch to D. Bunch was dated November
6, 1896, filed for record November 7, 1896, and recorded
in Book 84, page 201. Accepting the construction which
the parties themselves placed upon this instrument, D.
Bunch entered into the possession thereof, and he and
his vendees have been in the adverse possession thereof
since the date of this deed.

Where the granting clause in a deed is clear and un-
ambiguous, it will prevail where there is a discrepancy
between the granting clause and the preamble. See *Miller*
v. *Board of Supervisors,* 67 Miss. 651. This principle of
law was reaffirmed by the supreme court of this state, in
*Dunbar* v. *Aldrich,* 79 Miss. 689. Washburn on Real Prop-
erty, page 390; *Robinson* v. *Payne,* 58 Miss. 708. Where
a deed purports to convey the entire title, but the grantor
is not the owner thereof, it will pass such interest as he
possesses, so a deed for more land than the grantor owns
operates to convey so much as he can lawfully convey. See
text and notes, 62 et seq. in Vol. 18, Corpus Juris, page 291.

In the deed it will be noticed that there is only a grant-
ing clause under apt words, as provided by our statute,
giving full legal significance to the use of the words "con-
vey and warrant." The subsequent paragraph in the deed
is merely by way of explanation, and does not attempt to
do more than to explain the specific property conveyed.
The principles of law governing the construction of this
deed are so fully set forth and affirmed by the court in
*Barksdale* v. *Barksdale,* 92 Miss. 166, that we think that
case is determinative of the issue involved herein.

*Summary.* First: We think that the will did not vest
in Mrs. Betty Cowan a fee simple, but only a life estate
in her, with remainder in fee to her two children, Kate
Middleton and Annie Laurie Reddoch. This is as dis-
cussed in the brief of Honorable T. G. BIRCHETT.

Second: If mistaken in the legal conclusion as to the effect of the will, then the deed executed by Mrs. Betty Cowan violates section 1190 of the Mississippi Code of 1880 and the two daughters were vested with a fee simple title thereto, the limitations over being void, as this is discussed fully in the brief of Honorable T. G. BIRCHETT.

Third: The purchase from the heirs of an ancestor vested a fee simple title in D. Bunch, freed from the secret equities of the unrecorded deed from the ancestor.

Fourth: The purchase at the commissioner's sale vested a fee simple title in Charles Short, freed from the secret equities of the unrecorded deed.

Fifth: The deed executed by Annie Laurie Reddock vested in her vendee the whole interest, whether acquired by will or deed or inheritance.

We submit that the decree rendered by the Honorable court is correct and ought to be affirmed.

*T. G. Birchett* and *R. L. McLaurin*, for appellees.

That the first paragraph in the codicil of the will created a life estate in Mrs. Bettie Cowan, with remainder in fee to Annie Laurie Barton and Mrs. Kate J. Middleton, her two daughters. The language of the Codicil is as follo "First. I give and devise to Mrs. Bettie Cowan my daughter, and wife of J. J. Cowan, and her children now living or hereafter born, one undivided one-half (½) interest in the Haynes Bluff plantation." *Brabham* v. *Day*, 75 Miss. 927.

The authority quoted by this court in the case, *supra,* is from the 29 Am. & Eng. Cyc. Law (1 Ed.), page 508, and only gives the first part of the section dealing with such bequests, and does not consider the exceptions under which the construction of this codicil comes; they are: "But if there be any superadded words which import a desire that the property should be settled, the court will lay hold of the words, and will infer a gift to the parent for life with remainder to the children."

In Note 2, under this section, page 509, 8, cited as sup-

port of same we find: "8. If the bequest is such as express-
ly to include all the children of the parent, and not those
in being at the period of distribution, it will be construed
to give a life estate to the parent, with remainder to the
children, since it is a singular intention to impute to the
testator that the parents' interest in the estate should con-
tinually diminish on the birth of a new child. *Jeffry* v.
*Devitre,* 24 Beav. 296; *Jeffery* v. *Honeywood,* 4 Madd. 211.

This note is taken from the same reports as the case
cited in the opinion in the case, supra. "XI. Constitution
1. General Rules of Interpretation. a. *Intention of Tes-
tator—Statement of Rule.* The fundamental and cardinal
rule in the interpretation of wills is that the intention of
the testator, if not inconsistent with some established rule
of law or with public policy, must control, and it is the
duty of the courts to ascertain such intention and give
force and effect to the scheme that he had in mind for the
disposition of his estate. The intention which controls
is that which existed at the date of the will and that
which is expressed in the language of the will, not which
existed only in the testator's mind. It is also the legal, and
not necessarily the actual intention which governs." 30
Am. & Eng. Ency. Law (2 Ed.), p. 661; *Elliott* v. *Topp,*
63 Ill. 138, Syllabus.

What was the legal meaning of the words of the codicil,
from these the nature of the estate created must be drawn.

Section 1190 of the Code of 1880, reads as follows: "*Es-
tates in Fee Tail Prohibited.* (1190). Estates in fee tail
are prohibited, and every estate, which shall be created an
estate in fee tail, shall be an estate in fee simple; provided
that any person may make a conveyance, or a devise of
lands, to a succession of donees then living, not exceeding
two; and to the heirs of the body of the remainderman, and
in default thereof, to the right heirs of the donor, in fee
simple."

The manifest intent of Mrs. Bettie Cowan was to tie the
property up and keep it in the family. The court is re-
quested to read the other clauses in the *habendum,* and
this intent will be apparent. Under the early Mississippi

statute conveyances could be made to a succession of do-
nees then living, or to the heir or heirs of the body of the
remaindermen, and in default thereof, to the right heirs
of the donor in fee simple (Hutchinson's Code, 1848, page
609).

It will be noted that the number of living donees who
might take in succession under this provision was wholly
unlimited.  This remained the law of Mississippi until
the Code of 1857, which limited the grant to a succession
of donees then living, not exceeding two, and to the heirs
of the body of the remaindermen, and in default thereof,
to the right heirs of the donor in fee simple (page 307).
The provisions of 1857 still remained in force, and gov-
erned at the time of the giving of the deed by Mrs. Cowan
(Code 1880, sec. 1190).

It will be further noted that under the Mississippi stat-
utes the fixed time of twenty-one years is not included or
added, as was the case at common law.  It being the pur-
pose and policy of this state to prevent the entailment of
property except under limited conditions, and the legis-
lature intending to make the latitude much more restricted
than at common law, it necessarily follows that if the grant
departs from the bounds laid down it becomes void, and
by judicial construction of our supreme court, the fee vests
in the first grantee.

The complainants cannot successfully claim that the
holding of our court in *Banking Company* v. *Field,* 84
Miss. 646, to the effect that a grantor who reserves from
the operation of a deed a life estate for himself is not to be
counted as one of the donees within whose lifetime the
ultimate fee must vest, can have any bearing on the instant
case, because in the Field case the donor simply reserved
a life estate, the first step, that is before making any con-
veyances to outsiders at all.  In the instant case on the
contrary, the donor, after having more than exhausted all
of the possibilities of the rule, seeks to place herself in
the subsequent chain of title as a very late link in the
succession of takers, but she does not stop even there, for

she provides for the passage of her nephews, should she be then dead, thus constituting the sixth class of donees. In *Banking Company* v. *Field, supra,* the grantor retained a life estate before granting away the property; in the instant case the grantor after having made the attempted grant to a succession of donees seeks to put herself in as a later link in the chain.

We contend above that the attempted provision for Kate J. Middleton and her son, St. Claire, constituting the third and fourth classes of donees, was itself a stepping beyond the limits of the statute. This is true because the first two classes of donees are Mrs. Barton and her two children. The third step would necessarily have to be to the heirs of the body of the remaindermen. Who is the remainderman in this case? In this case it is the two children of Mrs. Barton. Judge CALHOUN illustrates this in his concurring opinion to *Banking Company* v. *Field,* at page 668.

In *Nicholson* v. *Fields,* 71 So. 900, a very recent case decided by COOK, P. J., in 1916, it was held that where land was attempted to be left to three nephews with provision for survivorship among them should they die without issue, the result was a devise to a succession of donees then living, exceeding two, and therefore invalid. It further appeared that additional limitations were added, as is true in the instant case, but that was not necessary to render the devise void. *Caldwell* v. *Willis,* 57 Miss. 555, at page 575. A similar result was reached in the case of *Hudson* v. *Gray,* 58 Miss. 882. See especially pages 890-93.

We respectfully submit that in the case at bar Mrs. Cowan went too far. After she had conveyed to the first donee, Mrs. Annie Laurie Barton for life with the provision for the passage of the property then to the two Reddoch heirs; in other words, after she had thus used up her succession of two classes of donees then living, and had provided for the property then to pass to the issue of said Reddoch heirs, thus taking advantage of all of the entailment rights that our statute had permitted, the only further

provision that she had the right to lay down with reference to future disposal of the property was that if there should be no heirs of the remainderman (that is, issue of said Reddoch heirs), the property would pass to the right heirs of the donor, instead of restricting herself to the exercise of the powers, allowed she sought to add in several more links in the chain of succession as well as to vary the permission granted by law, as we have demonstrated this made the entire series of limitations and conditions void, with the result as above set forth.

The many limitations in the instant case over-stepping the permissive bounds of the statute, render the attempted perpetuities void, and therefore it follows that the first donee became vested with a fee simple absolute. This donee was Mrs. Annie Laurie Barton. The case of *Davenport* v. *Collins*, 95 Miss. 358, gives the fee simple to the first takers.

In the case of *Gully* v. *Neville*, 55 So. 289, this court held: "*Wills—Partial Invalidity.* The principle that, though an ulterior limitation of an estate devised be void, the will may be sustained by dropping the limitation and leaving the rest of the will to stand, cannot be applied, where the provision cannot be separated without interfering with testator's manifest purpose as shown by the will."

We contend that under the recording statutes in Mississippi that a purchaser from the heir at law is as much protected against a prior unrecorded deed of the ancestor as if said purchaser held under a deed from said ancestor. The registry laws of this state applying to this contention are as follows: Code of Mississippi, section 2784 (2454); Section 2787 (2475), Code of Mississippi of 1906.

These statutes have been the law in this state since the Code of 1880. Code 1880, sections 1209, 1212 and 1213; Code 1892, sections 2454, 2457 and 2458. So far as property in Warren county was concerned, the recording of the deed in Yazoo county was ineffectual.

*Invalid as to Persons Within Recording Acts.* As to those classes of persons embraced within the terms of the

recording acts, a prior unrecorded conveyance is void, and this legal consequence of a failure to record will not be affected by the fact that such failure was due to unavoidable circumstances beyond the grantee's control. 24 Am. and Eng. Ency. of Law (2 Ed.) page 117.

A *Purchaser from The Heir* of a grantor in a prior unrecorded conveyance is as much entitled to protection as if he had purchased directly from such grantor. A contrary doctrine was upheld in a few early cases, but these decisions were based on a clear misconception of the purposes of the recording acts." 24 Am. and Eng. Ency. of Law (2 Ed.), page 121.

(96) *Validity as Against Subsequent Purchasers or Incumbrances.*—Registry is the creature of statute. If there were no statute requiring a registry, all persons would be bound at their peril, to take notice of a conveyance under which possession was taken. But by virtue of the recording acts an unrecorded deed or other instrument, required to be recorded, is not valid and effective against a subsequent *bona-fide* purchaser, even though it is proved that the instrument was accidentally lost in an attempt to transmit it to the recorder's office for the purpose of being recorded. An instrument not recorded is as to subsequent parties wholly without effect. It is in all respects, so far as they are concerned, as if it did not exist. The grantor who has conveyed away his land by an unrecorded deed, it is true, has no title or interest remaining in himself; and yet his deed to an innocent purchaser for value avoids by virtue of the registry statute the prior conveyance, and vests the title in the subsequent purchaser. Therefore the rights acquired by a *bona-fide* purchaser of real estate without notice of an unrecorded deed are not measured by the actual interest of the seller in the land, but rather by his apparent interest. 23 Ruling Case Law, page 232, et seq.

(116) *Purchaser from Heir, Devisee, etc.*—An unrecorded deed is made non-effective as against a *bona-fide* purchaser who purchases without notice thereof from anyone who in reality would possess the absolute title if it were

not for the unrecorded instrument. In case of the death of the grantor in an unrecorded deed the heir becomes the apparent owner of the legal title, and it is equally important and equally as just that the public may be allowed to deal with him as with the original grantor, if living; and the general rule is that a purchaser from the heirs or representatives of a vendor, if he purchases and pays for the land, without actual or constructive notice of the previous sale, is as fully within the spirit and equity of the recording acts as a second purchaser, from the vendor himself." 23 Ruling Case Law, page 249, et seq. This question is exhaustively discussed in the note to *Hallett* v. *Alexander,* Am. and Eng. Anno. Case 1912B, Vol. 23, Note, page 1289.

We now come to discuss the deed from Mrs. Annie Laurie Barton Reddoch, to D. Bunch (Recorded page 82). We contend that Annie Laurie Reddoch conveyed to D. Bunch by this deed all of her apparent interest, being a one-fourth interest in the said Haynes Bluff plantation.

This instrument contains these words: "It is the intention of this conveyance to convey to said grantee all interest of the grantor in and to the Haynes Bluff plantation in said county, whether correctly described above or not, said interest having been acquired by said grantor under the will of Mrs. Nancy Simmons, deceased."

The apparent record interest of Mrs. Reddoch was a one-sixth under the will of a one-twelfth inherited from her mother, Mrs. Cowan. "The deed conveys all interest in the grantor," and would take that interest regardless of any subsequent descriptive words in the deed. The learned counsel for the appellants argue that the words, "said interest having been acquired by said grantor under the will of Mrs. Nancy Simmons, deceased" narrow the grant by this deed to the interest devised to Annie Laurie Reddoch by Mrs. Nancy Simmons. This construction we contend is not supported by the first clause showing the intention to convey all the interest, and that at best are mere qualifying words, which will be disregarded as im-

pairing the manifest intent of the deed. Is it not true that the one-twelfth interest apparently inherited by Annie Laurie Reddoch from her mother came to her mother from the Nancy Simmons will, and would not Mrs. Reddoch have acquired under the will any land she took by descent from her mother, which her mother took under the will. We submit, that when one claims under an instrument, it is by virtue of this instrument when it appears in the chain of title.

In the case of *Barksdale* v. *Barksdale,* 92 Miss. 166, Syllabus 2 and 3 the court held: "A mere redescription in a deed of the property conveyed is not such a particular one as will control a general description preceding it."

"A good general grant will not be limited by a subsequent particular description unless the terms of the particular description show an intention to limit the general grant." There is clearly no intention in the deed from Annie Laurie Reddoch to Bunch, *supra,* to limit the grant, but only to further describe it. Exactly the doctrine of *Hart* v. *Gardner,* 74 Miss. 153, 20 So. 877.

The claim of title by these appellees, commencing in 1904 had been perfected by the statute of limitation in this state long prior to the filing of the deed, September 30, 1916. The statute, section 3074, vests title in any one claiming under it, reserving rights of minors; but under the Registry Laws of this state, the minors had no rights against these appellees until the deed Exhibit B was recorded, and this as more than ten years after the possession had commenced.

That these appellees buying the apparent record title or a one-fourth in the Haynes Bluff plantation for a valuable consideration without notice are purchasers for value and come within the protection of the recording acts, and that the deed Exhibit B is utterly void so far as their rights are concerned.

That the appellee, H. K. Williams, is in the same position as is set out above under the deed from Annie Laurie Bar-

ton of her apparent one-fourth interest in said property to D. Bunch.

That the partition should not be disturbed, because the appellees are in possession of only what they legally own towit; a one-fourth of said plantation; they not claiming at all under Annie Laurie Barton but under Mrs. Kate Middleton Bentley, being in another line of title.

We respectfully submit that the decree of the learned chancellor below was correct, and should be affirmed.

SYKES, P. J., delivered the opinion of the court.

This suit was begun in the chancery court of Warren county by Marie and Joseph Reddoch, minors, by their next friend, against the appellees (defendants in the lower court) for the partition of a certain plantation named the Haynes Bluff plantation, situated in Warren county. In their bill the complainants set forth their claim of title each to an undivided one-twenty-fourth interest in the plantation. In the answer their claim is denied, and defendants claim further to be purchasers for value without notice. The defendants by cross-bill ask that the claim of complainants be cancelled as a cloud upon their title. The cause was tried upon pleadings, exhibits, and an agreed statement of facts, and the claim of the complainants was cancelled as a cloud upon the title of defendants, from which decree this appeal is here prosecuted.

The facts are undisputed, and we are confronted purely with questions of law.

The claim of the complainants rests upon the following facts:

In 1885 Mrs. Nancy Simmons, the owner of the Haynes Bluff plantation, died. Paragraph 1 of the codicil to her will is as follows:

"First. I give and devise to Mrs. Bettie Cowan, my daughter, and wife of J. J. Cowan, and her children now living or hereafter born, one undivided half (½) interest . . . in the Haynes Bluff plantation. . . ."

The other one-half interest of this plantation was devised to her grandchildren Anna Elizabeth, Nancy Hudnall, and Annie Harcolm Simmons. When the codicil was written and at the time of the death of the testatrix, Mrs. Bettie Cowan had only two children living, two daughters, Annie Laurie Cowan and Kate J. Cowan, who were the only children ever born to Bettie Cowan. In 1889 Bettie Cowan executed a deed whereby she attempted to convey to her daughter Annie Laurie Barton an undivided one-half of a one-sixth interest to this plantation, and in the same deed conveying the other undivided one-half of a one-sixth interest to her other daughter, Kate J. Middleton, for her life, the remainder at her death to her child or children in fee. That part of the deed relating to the interest conveyed to Annie Laurie Barton pertinent to this inquiry is as follows:

". . . The said Bettie S. Cowan does by these presents give, grant, convey, and warrant to her said daughter, Annie Laurie Barton, an undivided one-half (½) of the said one-sixth (1/6) interest of, in and to the said tract of land, known as the Haynes Bluff plantation, to have and to hold the same to the said Annie Laurie Barton for and during the term of her natural life, with remainder at her death to her lawful child or children in fee; if she leaves any one or more surviving her; and, if she leaves none, then to her sister, the said Kate J. Middleton, until her own child, Barton St. Clair, shall become of lawful age, and then to him in fee; provided, that, if the said Kate J. Middleton should die before her said son, Barton St. Clair, becomes of lawful age, then the said interest in said land shall revert to and vest in the grantor herein in fee; and, if she be dead, then to Nancy and Annie Simmons, children of her brother, Benjamin Simmons, in equal shares in fee simple."

The one-sixth interest devised to Anna Elizabeth upon her death became vested by inheritance in her sisters Annie Harcolm Simmons and Nancy Ross, each inheriting an undivided one-half interest. This one-half interest inherited by Nancy Ross was by her in 1895 conveyed to An-

nie Laurie Reddoch. In 1896 Annie Laurie Reddoch by deed conveyed to D. Bunch a one-half of a one-sixth undivided interest in this property. This was the one-half interest purchased from Nancy Ross. Later on that same year Annie Laurie Reddoch by warranty deed for valuable consideration conveyed to the same grantee Bunch, by particular description this plantation, which description is followed by these words:

"It is the intention of this conveyance to convey to said grantee all the interest of the grantor in and to the Haynes Bluff plantation in said county whether correctly described above or not, said interest having been acquired by said grantor under the will of Mrs. Nancy Simmons." 

In 1900 Kate J. Bentley, nee Cowan, by warranty deed conveyed to D. S. Burns a one-fourth interest in this plantation. This deed contains the following clause:

"It is the purpose and intention of this deed to convey and warrant to said D. S. Burns an undivided one-fourth interest in and to all the lands belonging to the Haynes Bluff plantation and all the lands belonging to Nancy Simmons at the time of her death not since disposed of by heirs and all the interest in said plantation inherited by the undersigned Kate J. Bentley from her mother, Mrs. Bettie Cowan."

In 1904 Annie Laurie Reddoch disappeared, and is therefore presumed to have died in 1911. It is further agreed that Bettie Cowan died intestate in 1890, leaving as her heirs at law her two daughters, Annie Laurie Barton and Kate J. Middleton; that Annie Laurie Barton was the mother of only two children, namely, the complainants in this case.

The deed from Bettie Cowan to her two daughters, Annie Laurie Barton and Kate J. Middleton, was not recorded in Warren county until just before the bringing of this suit. It is also shown by the record that the defendants and those under whom they claim have been in possession of this plantation at least since 1896. It is

unnecessary to set out in detail the chain of title of other defendants.

Briefly stated, it is the contention of the appellants that, under the codicil of the will of Nancy Simmons, Bettie Cowan and her two daughters, Annie Laurie and Kate J., each became vested with a fee-simple title to a one-third of an undivided one-half, or a one-sixth, undivided interest in this plantation; that by the Bettie Cowan deed she gave for life to her daughter Annie Laurie a one-half of this one-sixth, or a one-twelfth interest in this plantation, with remainder in fee to her two children, thereby vesting in these two children (the complainants) an undivided one twenty-fourth interest in this plantation, which interest they now hold, and are therefore entitled to have these lands partited.

This case was submitted to the court some time ago and has received at our hands a most careful consideration. We think it best for an understanding of this opinion to take up and dispose of the questions as they are presented in the briefs of counsel.

It is the contention of the appellee that this codicil to the will of Nancy Simmons devised a life estate to Bettie Cowan with remainder in fee to her children; that this is made manifest because the devise is to unborn as well as children now living. The appellant contends that this created a fee-simple estate in Mrs. Bettie Cowan and children, in equal parts as tenants in common. As a matter of fact Mrs. Cowan had at the time the codicil was written and at the time of the death of the testatrix but these two children. Mrs. Cowan and these children, as tenants in common, were devised in fee simple an undivided one-sixth interest in this plantation. In the language of the court in the case of *Brabham* v. *Day,* 75 Miss. 923, 23 So. 578, we think that the plain and obvious interpretation of the words of the codicil vests the fee in these three devisees as tenants in common. While there is a minority view to the effect that, where a devise includes unborn children, the contention of the appellee is correct, yet the vast ma-

jority of the courts hold, and in our judgment the sound
view is, that the fee is devised to them as tenants in com-
mon. In fact, to hold otherwise would be to violate the
unambiguous meaning of the codicil. There is a very in-
teresting note in which the authorities are reviewed found
in L. R. A. 1917B, 49 et seq.

It is next contended that the deed of Bettie Cowan was
violative of section 2765, Code of 1906 (section 2269, Hem-
ingway's Code), and that under this section Annie Laurie
Barton was vested with a fee-simple title to a one-twelfth
undivided interest in the plantation. From a reading of
the pertinent parts of this deed, which are set out above,
it will be noted that this deed vests a life estate in Annie
Laurie Barton with remainder at her death to her lawful
child or children in fee. By these words there is no at-
tempt whatever to create an estate tail. The usual words
for creating such an estate are not used in this deed. This
remainder is not limited to the heirs of her body as would
be necessary in order to create an estate tail. It therefore
follows that the first part of this section is not violated be-
cause no attempt was made to create an estate tail; con-
sequently it is not converted into an estate in fee simple.
It is not necessary to decide whether the second part of this
section is violated.

It was the purpose of Bettie Cowan to give a life estate
to Annie Laurie Barton with remainder in fee to Annie
Laurie's child or children. This was the dominant pur-
pose and intent of the grantor of the deed. This was a com-
plete disposition of the property. Therefore, if other lim-
itations violate the statute, it is the duty of the court to
hold valid those dispositions which do not violate the stat-
ute, and in this case the remainder in fee to these two ap-
pellants does not do so. This rule has been recognized in
this state. We find it alluded to in the latter part of the
opinion of the court in the case of *Gully* v. *Neville* (Miss.),
55 So. 289, in the following language:

"Another most ingenious effort to save the will is made
by reference to the well-settled principle that, if the ulte-

rior limitation is void, nevertheless the will may be saved by dropping that ulterior limitation and leaving the rest of the will to stand. But this doctrine, a thoroughly well settled one, is subject to the necessary qualification that the principle cannot be applied where you cannot separate the ulterior limitation without interfering with the manifest purpose of the testator, as shown by the whole body of the will. . . ."

This rule was recognized in the first opinion of the court in the case of *Henry* v. *Henderson,* 101 Miss. 751, 58 So. 354. On page 760 of 101 Miss., on page 357 of 58 So., it is said:

"In this connection we desire to say that, though an ulterior limitation of the estate devised is void, the whole provision, on that account, will not be declared void; but, upon the other hand, that portion of the will will be sustained in so far as it does not offend against the principal of perpetuities."

While a suggestion of error was sustained and this cause differently decided as shown in 103 Miss. on page 48, 60 So. 33, we do not understand that the court meant in any way to modify the above quotation as to the law; in fact, a careful consideration of the second opinion will show that the court necessarily recognized this as the true rule.

This rule is thus stated in 22 A. & E. Ency. of Law (2 Ed.), p. 723:

"Where an interest of estate is given by a deed or will with a limitation over on a specified contingency, such limitation, if it violates the rule against perpetuities, is for the purpose of determining the effect on the prior disposition of the property to be considered as stricken out, leaving the prior disposition to operate as if the limitation over had never been made."

Again on the same page: "In accordance with the general rule which has just been stated, where a disposition of property or of an interest therein is followed by a limitation over, the prior disposition is not invalidated by the fact that the limitation over is void for remoteness."

This rule is thus well stated in the case of *Church of Brattle Square* v. *Grant*, 3 Gray (Mass.) 142, 63 Am. Dec. 725: "Upon this point we understand the rule to be that, if a limitation over is void by reason of its remoteness, it places all prior gifts in the same situation as if the devise over had been wholly omitted."

21 R. C. L., p. 320, section 54: "When a part only of a gift is invalid by reason of the rule against perpetuities, and the invalid limitation is an essential part of the general scheme of the will or gift, the several parts of the devise or the grant are treated as inseparable, and the whole is adjudged void. But where the various provisions of a will are in fact independent, and not for the carrying out of a common or general purpose, those which are contrary to the rule may be rejected, and the valid provisions upheld. The test is whether the rejected parts may be expunged without essentially changing the general testamentary scheme."

In the third edition of the Rule Against Perpetuities by Gray it is there stated that: "If future interests created by any instrument are avoided by the rule against perpetuities, the prior interests became what they would have been had the limitation of the future estates been omitted from the instrument. Thus, if an estate is given to A. for life, remainder to his children and their heirs, but, if the children all die under twenty-five, then to B. and his heirs, the limitation to B. is too remote, and the children of A. take an indefeasible fee simple."

From these authorities it follows that the conveyance to these two appellants in fee in the deed was not a violation of this statute, and was a valid conveyance.

It will be recalled that this deed of Bettie Cowan was not of record in Warren county. She died intestate leaving as her sole heirs at law Annie Laurie Reddoch, mother of these complainants and Kate J. Bentley (nee Cowan). It will also be recalled that Kate Bentley in 1900 by deed conveyed an undivided one-fourth interest in this plantation to D. S. Burns. This deed of Kate Bentley conveyed all

of the apparent interest vested in her in this plantation at that time, namely, the one-sixth interest devised her by the will of Nancy Simmons and the one-half of the one-sixth interest apparently inherited by her as one of the two heirs at law of Bettie Cowan. The deed from Bettie Cowan conveying life estates to her two daughters, Annie Laurie and Kate J., with remainder to their children, was not of record.

The appellees contend that they and those through whom they claim title are purchasers of these lands for a valuable consideration without notice, and that under sections 2784 and 2787, Code of 1906 (sections 2288 and 2291, Hemingway's Code) the Bettie Cowan deed is void. Section 2784, among other things, provides that a conveyance of land shall not be good against a purchaser for valuable consideration without notice unless properly acknowledged and lodged with the clerk of the chancery court for record. Section 2787 upon this question provides that conveyances of lands shall be void as to all creditors and subsequent purchasers for a valuable consideration without notice unless properly acknowledged and lodged with the chancery clerk for record. It is admitted in this case that the Bettie Cowan deed was not lodged with the chancery clerk for record. The important question then presents itself whether or not these defendants are purchasers for value without notice. The record shows that they had no notice of the Bettie Cowan deed. It is the contention of the appellant that these defendants were not purchasers from Bettie Cowan, and that these registry statutes only protect purchasers from the vendor in the unrecorded deed. This court had uniformly so held, the rule being as follows:

"The creditor, too, or purchaser, must be a creditor of, or purchaser from, the grantor in the unregistered deed." *Dixon* v. *Cook*, 47 Miss. 220; *Miss. Valley Co.* v. *Railway Co.*, 58 Miss. 846; *Chaffe et al.* v. *Halpin et al.*, 62 Miss. 1.

The appellees, however, claim that a purchaser from the heirs at law of a deceased person is protected by these stat-

utes, because the heirs at law, so far as the title to real property is concerned, stand in the shoes of and occupy the exact position of the deceased grantor. This exact question has not heretofore been decided by this court to our knowledge. This position of the appellees, upon reason and justice and the vast majority of adjudicated decisions in this country upon this point, is in our judgment correct. It is the duty of a prospective purchaser of lands to investigate the records pertaining to this title. He is charged with constructive notice of their contents. From these records he ascertains who the apparent owner is. If a previous owner of these lands be dead, he looks for a will, and, in the absence of a will devising these lands, he ascertains who the heirs of the deceased are. In the absence of a will, these heirs are the apparent owners of the land. They occupy the same position with reference to the title to this land that their ancestor, the grantor in the deed, occupied. This rule is stated in A. & E. Ency. of Law (2 Ed.), vol. 24, p. 121, as follows:

"A purchaser from the heir of a grantor in a prior unrecorded conveyance is as much entitled to protection as if he had purchased directly from such grantor. A contrary doctrine was upheld in a few early cases, but these decisions were based on a clear misconception of the purposes of the recording acts."

23 R. C. L. p. 249 states the rule thus: "An unrecorded deed is made noneffective as against a *bona-fide* purchaser who purchases without notice thereof from any one who in reality would possess the absolute title if it were not for the unrecorded instrument. In case of the death of the grantor in an unrecorded deed the heir becomes the apparent owner of the legal title, and it is equally important and equally as just that the public may be allowed to deal with him as with the original grantor, if living, and the general rule is that a purchaser from the heirs or representatives of a vendor, if he purchases and pays for the land, without actual or constructive notice of the previous

sale, is as fully within the spirit and equity of the record-
ing acts as a second purchaser from the vendor himself."

In Ann. Cas. 1912B, there is an exhaustive case note on
page 1289 wherein the authorities are collated.  The hold-
ing in these cases is thus summarized:

"The question presented in the reported case is whether
the rule that an unrecorded deed is ineffectual as against
a subsequent bona-fide purchaser from the same grantor is
applicable where the subsequent purchase is from the heir
of the original grantor.  As in the reported case, the de-
cisions passing upon this question have generally answered
it in the affirmative.  The rule may therefore be stated to
be that, where a *bona-fide* purchaser of or from heirs com-
plies with the requirements of the recording acts, he ac-
quires a good title as against the grantee in an unrecorded
deed from the ancestor."

We therefore conclude that a purchaser for value with-
out notice from the heirs of a grantor in a prior unrecord-
ed deed is protected by these laws.

It is insisted however, for the appellant that these ap-
pellees are not purchasers for value without notice:

First, because the deed of Annie Laurie Reddoch to
Bunch only conveyed to him the interest in this planta-
tion acquired by her under the will of Mrs. Nancy Sim-
mons.  Annie Laurie Reddoch made two conveyances to
D. Bunch.  Before making them she owned the following
interests in this plantation: First, a one-sixth undivided
interest in fee devised her in the Nancy Simmons will;
second, a life estate in a one-twelfth undivided interest,
with remainder to her two children (the appellants) ac-
quired by deed from her mother Bettie Cowan; and, third,
a one-twelfth undivided interest in fee acquired by deed
from Nancy Ross.  Her first deed to Bunch conveyed the
interest acquired from Nancy Ross, then leaving her with
the two interests numbered 1 and 2, *supra*.  Owning these
two interests in 1896, she made what purports to be a
warranty deed to D. Bunch describing the Haynes Bluff
plantation.  The particular description of this plantation

is followed by the words above quoted. At the time of this conveyance ·Annie Laurie Reddoch was the real owner in fee of a one-sixth undivided interest as stated above. She was the apparent owner in fee of an undivided one-twelfth interest inherited from her mother, Bettie Cowan, as an heir at law, or in other words, so far as the record title is concerned, she apparently owned a one-sixth plus a one-twelfth or a one-fourth undivided interest, the same amount as her sister, Kate J. Bentley, owned. The clause in this deed states that it is the intention of the grantor to convey all of her interest in this plantation. So far this is perfectly clear and unambiguous and would certainly convey this one-fourth undivided interest. However, this language is followed by this expression: "Said interest having been acquired by the grantor under the will of Mrs. Nancy Simmons."

Strictly speaking, only this one-sixth interest was acquired immediately under the will of Nancy Simmons. However, Bettie Cowan, her mother, acquired her interest under the will of Nancy Simmons, one-half of which interest upon the death of Bettie intestate apparently passed to Annie Laurie, so she immediately acquired under the will of Nancy Simmons a one-sixth interest in this plantation and remotely acquired by virtue of this will a one-twelfth interest apparently, inherited from her mother. In this deed there was a good general granting clause, clear and unambiguous, of all of her interests in this plantation, followed by the somewhat ambiguous clause referring to this interest as having been acquired under the Nancy Simmons will. The rule announced in *Barksdale* v. *Barksdale,* 92 Miss. 166, 175, 45 So. 615, 617, is thus stated:

"The true principle here is this: That a good general grant will never be limited by a subsequent particular description unless it is·manifest that this particular description was meant to operate as a limitation; and this intention, that it shall so operate as a limitation, must be definitely expressed in the terms used in the particular description."

Again, on page 176 of 92 Miss., on page 617 of 45 So.:

"Whatever is expressly granted, or covenanted, or promised, cannot be restricted or diminished by subsequent provisions or restrictions; but general or doubtful clauses precedent may be explained by subsequent words and clauses not repugnant or contradictory to the express grant, covenant, or promise."

That it was her intention to convey all of her interest in this plantation to Bunch is further shown by the fact that after its execution she made no claim whatever to the ownership of any interest in it.

The second contention of the appellant upon this question is that, since there was a purchase only of her interest in the plantation, the appellees are not innocent purchasers for value without notice, citing 39 Cyc. 1694. That portion of text relied upon is as follows:

"If the deed purports and is intended to convey only the right, title, and interest in the land, as distinguished from the land itself, it comes within the strict sense of a quitclaim deed and will not sustain the defense of innocent purchaser."

The following section, however, upon the same page, which relates to the effect of registry acts, reads as follows:

"It is held in most jurisdictions that the rule that a purchaser by a quitclaim deed is not to be regarded as a *bona-fide* purchaser without notice of a prior incumbrance has no application where the registry laws require the recording of such incumbrance in order to make it a lien on lands in the hands of a subsequent purchaser"—citing very many authorities, among others that of *Moelle* v. *Sherwood,* 148 U. S. 21, 13 Sup. Ct. 426, 37 L. Ed. 350.

In that case this question is discussed, and it is there held that, where a purchaser without notice for a valuable consideration received a quitclaim deed to lands, he is a purchaser for value under registry laws and protected by them. We think this is the correct doctrine, though in this case this is not a quitclaim deed.

These appellees by deeds from Annie Laurie Reddock to D. Bunch and from Kate J. Bentley to Burns acquired from these grantors the apparent interest inherited by them from their mother, Bettie Cowan. They had no notice of this unrecorded deed, and these interests were purchased for a valuable consideration. They are therefore purchasers for value without notice under these two statutes, and this unrecorded deed of Bettie Cowan is void as to them.

The chancellor so held, dismissed the bill, and cancelled the claim of these appellants as a cloud upon the title of appellees. This decree was correct and is affirmed.

*Affirmed.*