FEDERAL LAND BANK OF NEW ORLEANS *v.* COOPER *et al.*

(In Banc.    March 10, 1941.)

[200 So. 729.    No. 34434.]

Wells, Wells, & Lipscomb, of Jackson, Gordon & Gordon, of Liberty, and B. C. Adams, E. F. Steiner, and T. H. Hedgepeth, all of New Orleans, La., for appellant.

494

Watkins & Eager, of Jackson, and Fred A. Anderson, Jr., of Gloster, for appellees.

Argued orally by **W. Calvin Wells** and **Beverly C. Adams**, for appellant, and by **Tom Watkins, Mrs. Elizabeth Hulen**, and **F. A. Anderson, Jr.**, for appellees.

**Smith, C. J.**, delivered the opinion of the court.

The appellant is a corporation created under the Federal Farm Loan Act of July 17, 1916, Chapter 245, 39 Stat. at Large 360, U. S. C. A. Title 12, Sec. 641 et seq. On July 25, 1935, a deed of trust given it on certain land in Amite County to secure a loan made by it to the grantor therein was foreclosed, and the land was purchased at the foreclosure sale by the appellant. In November 1937, T. E. Cooper offered in writing to purchase the land "Less and except any mineral rights or underlying minerals which may heretofore have been sold, leased, or reserved, if such there be, it being understood that only one-half of such mineral rights as may be legally vested in the grantor are to be conveyed to the undersigned. The appellant accepted this offer, and on the 6th day of December, 1938, conveyed the land to Cooper by a deed reciting that "The said grantor does hereby convey and warrant unto T. E. Cooper, hereinafter called Grantee, the following described real estate situated in the County of Amite of Mississippi, to-wit: (Description of land omitted)

One-half interest in all minerals is reserved to the Grantor.'' Afterwards, Anderson and Latimer acquired an interest from Cooper in the minerals in this land, and, together with Cooper and his wife, filed an original bill of complaint against the appellant, praying that its claim to a one-half interest in the minerals in the land reserved by it in the deed to Cooper be cancelled. This bill was met by an answer and a cross-bill praying that the complainants' claim to a one-half interest in the minerals in the land be cancelled. The court below, after hearing evidence, dismissed the cross-bill and granted the prayer of the original bill.

The appellees' contention is that the reservation or exception of the minerals in the deed from the appellant to Cooper is void, and consequently the minerals in the land passed to Cooper under the deed unaffected by the reservation therein thereof. While there is a distinction between a reservation and an exception in a conveyance of land ''they are quite commonly used as interchangeable terms, and the meaning intended must be determined by reference to the subject matter and the surrounding circumstances . . . an exception excludes some part of the thing from the conveyance and the title to that part remains in the grantor by virtue of his original title, while a reservation creates a new right out of the subject of the grant and is originated by the conveyance.'' 16 Am. Jur., Deeds, Sec. 298; 2 Tiffany Real Property (2 Ed.), Sec. 436. It is manifest from this deed that the clause thereof here under consideration was intended to and does exclude therefrom a one-half interest in the minerals in the land conveyed. It is therefore an exception and is valid if it meets the legal requirements therefor. ''In every good exception, these things must always concur: 1. The exception must be by apt words. 2. It must be of part of the thing granted, and not of some other thing. 3. It must be a part of the thing only, and not of all, the greater part, or the effect of the thing granted. 4. It must be of such a thing as is severable from the

thing which is granted, and not of an inseparable incident. 5. It must be of such a thing as he that doth except may have, and doth properly belong to him. 6. It must be of a particular thing, out of a general, and not of a particular thing, or a part of a certainty. 7. It must be certainly described and set down." Moore v. Lord, 50 Miss. 229. The first, fifth and seventh of these components of a "good exception," while not specifically referred to by counsel for the appellees, are the ones to which we are led by the reasons given by them in support of their contention that the exception is void.

As to the first. The appellees say that the exception of the minerals from the conveyance is inconsistent with and repugnant to the prior clause therein by which the land is conveyed. This contention is ruled adversely to the appellees in Moss v. Jourdan, 129 Miss. 598, 92 So. 689, 690, wherein the Court said, in dealing with an exception similar to the one here, that the rule here invoked is subject to the "well-settled qualification that an election cannot be made between repugnant and inconsistent clauses 'if they can be made to harmonize with the general purpose and scheme of the parties as derived from the whole instrument.' . . . This qualification of the rule controls here, for it is manifest from the face of the deed that the grantors intended thereby, and the legal effect of the language they employed is, to convey the land described therein except all mineral that may be therein or thereon."

As to the seventh, which will be disposed of before coming to a discussion of the fifth, the appellees say "that this attempted exception is as vague as it could have possibly been drawn. It does not state whether it refers or is limited to the property that had been conveyed by the deed or not." The exception must be construed in connection with its context, and when this is done it clearly appears that it is limited, and refers only, to the minerals in the land conveyed.

This brings us to the fifth of these component elements of an exception. The appellees' argument here is that *this* appellant is without the right under, (1) its charter, and (2) the public policy of the State of Mississippi to except minerals from deeds to land made by it and retain the ownership thereof.

As to the claimed violation of the appellant's charter. We will assume for the present, but for the purpose of the argument only, that the appellees have the right to challenge the appellant's power under its charter to hold the minerals in this land, but to which we will return later. Under Paragraph (b) of the fourth subdivision of Section 781, Title 12 U. S. C. A. of the Federal Farm Loan Act, the appellant had the right to purchase the land conveyed by it to Cooper at the sale thereof under its deed of trust thereon and to hold it and any separable portion of it for five years, and longer with the approval of the Farm Credit Administration, which purchase ex necessitate carried with it all minerals in the land and vested the title thereto in the appellant. After the appellant acquired title to the land, it had the right to sell it without the minerals therein to one and the minerals to another, either contemporaneously or at different times. This we do not understand counsel for the appellees to controvert, but they say that the purpose for which the appellant was organized was to "set up a rural credit system by which credit, not adequately provided by commercial banks, should be extended to those engaged in agriculture, upon the security of farm mortgages" (Federal Land Bank v. Gaines, 290 U. S. 247, 54 S. Ct. 168, 169, 78 L. Ed. 298); that Section 791 of the Farm Loan Act prohibits it from transacting "any banking *or other business* not expressly authorized by the provisions of this sub-chapter" (italics ours), and that the exception in this deed is pursuant to a policy adopted by the bank of placing similar exceptions in all of the deeds conveying land owned by it for the purpose of engaging "in the mineral or oil and gas business"—a business not author-

ized by the appellant's charter, but in which it is prohibited from engaging. In support of this, attention is called to a resolution appearing on the minutes of the appellant's board of directors providing for exceptions of this character in all deeds to land executed by it pursuant to which it now claims to own an interest in all minerals in 1,259,059 acres of land in Mississippi, to look after which it maintains a special staff of employees.

As hereinbefore said, the appellant had the right to reserve the minerals in this land when selling it, and to thereafter sell them. Should it go further than this and enter actively into the mineral, oil and gas business, its right so to do will be for determination when but not until it is challenged either by the Government from which it received its charter, or by someone injured thereby, and who has the right so to do.

In support of their contention that by excepting minerals from land conveyed by the appellant, it has violated the public policy of this State, the appellees say (1) it is ''against the public policy of a state to allow corporations to hold real estate beyond what is necessary for the transaction of the business or special corporate purposes of such corporation;'' and (2) that the spirit if not the letter of Section 4150, Code of 1930, is violated; and (3) the retention by the appellant of the ownership of the minerals in land sold by it will result in its having a monopoly of the mineral, oil and gas business in Mississippi. In support of these contentions, the appellees call attention to the fact that under such exceptions the appellant now claims an interest in all minerals in 1,259,059 acres of land in the State—one out of every 23.57 acres in the State.

We assumed for the purpose of the argument, when discussing the appellant's right, under its charter, to hold this land, that the appellees had the right to challenge its power so to do; but to which we now return. One of the well-settled rules developed by the courts in dealing with claimed ultra vires acts of corporations is that a corpora-

tion's right to acquire and hold land—whether in violation of its charter or laws or public policy of the State—can be questioned only by the state in which the land lies or the sovereignty from which the corporation received its charter. Nicholson v. Myres, 170 Miss. 441, 154 So. 282, and authorities there cited; Taylor v. Alliance Trust Company, 71 Miss. 694, 15 So. 121; Union National Bank v. Matthews, 98 U. S. 621, 25 L. Ed. 188; Fritts v. Palmer, 132 U. S. 282, 10 S. Ct. 93, 33 L. Ed. 317. A legion of other cases so holding will be found collated in 4 Thompson on Corporations (3 Ed.), Sec. 2478, Note 19, and note to Puget Sound National Bank v. Fisher, 52 Wash. 246, 100 P. 724, 17 Ann. Cas. 526. Whether the appellant is without the right to hold these minerals cannot be here challenged by the appellees.

Finally, it is said by the appellees that the retention of title by the appellant to this mineral violates the provision of Section 791 of the Federal Farm Loan Act that "No Federal land bank shall have power . . . To demand or receive, under any form or pretense, any commission or charge not specifically authorized in this subchapter." We are unable to perceive how the retention by the appellant of one of the separable ingredients of land, here the minerals therein, when selling the remainder of the land, is in any way affected by this statute. It is neither a commission nor a charge for selling the land, no more so than if the minerals had been sold and the remainder of the land retained.

The decree of the court below will be reversed, a decree will be rendered here dismissing the appellees' bill of complaint and cancelling their claim to the one-half interest in the minerals excepted from the deed to this land from the appellant to Cooper.

So ordered.

**Roberds, J.**, did not participate in the decision of this case.